**FORD MOTOR COMPANY, Plaintiff,**

v.

**W. F. HOLT & SONS, INC., Defendant and Third-Party Plaintiff,**

v.

**BRISTOL STEEL AND IRON WORKS, INC., Third-Party Defendant.**

Civ. A. No. 5384.

United States District Court,
M. D. Tennessee,
Nashville Division.

Feb. 24, 1971.

Maclin P. Davis, Jr., Nashville, Tenn., for plaintiff.

W. E. Herod, Nashville, Tenn., for W. F. Holt & Sons, Inc. (defendant and third-party plaintiff).

William J. Harbison, Nashville, Tenn., for Bristol Steel & Iron Works (third-party defendant).

## MEMORANDUM

MORTON, District Judge.

This is a suit by Ford Motor Company, the owner of property on which construction was performed, against W. F. Holt & Sons, Inc., the general contractor, for indemnity for sums paid for the personal injury of an employee of the subcontractor, Bristol Steel & Iron Works. The general contractor by third party complaint seeks to recover from the subcontractor the amount of any judgment obtained against the general contractor.

The general contractor contracted to erect for the owner additions to certain existing structures. The contract contained an Indemnity Clause 31,[1] indemnifying the owner against its own negligence with the exception of injuries and damages occurring by reason of the "sole negligence" or "willful misconduct" of the owner or his employees. By memorandum designated as a purchase order, there was an assignment of the structural steel work to the subcontractor. In open court, all parties conceded that the effect of the wording of such memorandum was that the subcontractor assumed, as to the Indemnity Clause 31, the same contractual indemnity relationship to the general contractor as that existing between the general contractor and the owner.

A portion of the construction required attaching or tying steel to a portion of the existing structure. In that portion of the existing structure where the accident occurred, the owner's plant was in operation. As a part of this operation there was an overhead crane which, spanning the entire structure, moved on tracks situated on steel beams along the outer walls of the structure. The crane, manually operated by a person in the cab thereof, traversed a distance estimated as being some 1000 feet. From track to track the width of the crane was estimated as being 40 to 60 feet. It consisted of two cross beams joined at the ends adjacent to the building walls by cross members so as to form a rectangular steel frame. The cab was suspended from the center of the rear cross member, approximately 20 to 30 feet from the side walls. The cross members, although level on the top, are arced on the bottom side with the low point of

---

1. The entire indemnity clause is reproduced as an addendum to this Memorandum.

the sag being the center. The front beam and the back beam of the crane are approximately 10 feet apart so as to permit a trolley to run thereon from side to side.

When the crane is moving so that the front beam is between the cab and the destination of the crane, the field of vision of the crane operator in the cab is obstructed by the front beam to a distance of 100 to 150 feet in front of said front beam. The crane was operated by an employee of the owner.

Prior to the accident, the general contractor had cut an opening in the end wall of an existing structure, the opening being 7 to 9 inches wide and extending in length approximately 40 feet parallel to the ground. The opening was slightly below the tracks of the crane. A crew of the subcontractor was tying steel from the outside of the existing structure to the existing structure. To assist in the operation, one of the employees of subcontractor, without notifying owner or general contractor, went inside the existing structure and climbed to the opening. While inside the structure the employee Elizer was struck and injured by the crane while it was in use in owner's production procedure.

The uncontroverted proof is that at the time of the of the accident Elizer was physically on the crane track. Furthermore, in the performance of his work, he was not required to be on the track. In fact, while on the track he could not perform his job. Without objection thereto, a superintendent testified that in order to rest, Elizer had probably stepped up to the track rather than climb down the wall to the ground. Elizer knew of the existence of the crane, admitted that if he had looked he could have seen the crane move, but stated he did not look. He admitted that the crane made some noise but asserted that the crane did not sound its siren. He stated it was his understanding that the owner's safety rules required that the siren be sounded. In addition, he asserted that a person on the ground, directing the crane operator, was supposed to keep a lookout ahead of the crane.

The owner had a safety engineer at the construction site. It had certain safety rules concerning "stops" to be placed on the crane rails, flagmen or hookers (a person on the ground directing the crane operator in the movement of the loads), and the blowing of the crane siren each time before the crane moved. Furthermore, it had a regulation that the supervisor in the building who was in charge of the owner's production should be notified prior to the entry of any construction worker into the area.

Of interest to the Court was the fact that the owner's employees did not agree in their testimony as to the existence of all these safety rules. Nor could they state positively that same had been specifically called to the attention of the general contractor or the subcontractor. The only safety regulation about which there was no variance and no dispute as to notice to general contractor and subcontractor was that no construction worker was to enter the owner's working area without notice to the owner's supervisor.

It is uncontroverted in the record that no such notice was given prior to the injury of employee Elizer.

Mr. Elizer instituted suit on January 2, 1968, against the owner, alleging that his injuries which occurred on April 14, 1967, were caused by the sole negligence of the owner. By letters dated January 8, 1968, and December 3, 1968, the general contractor was "vouched in" by owner's representatives.[2] However, the general contractor refused to take over the defense or take any positive action. Thereafter, the owner effected a settle-

2. Although the amount of the final settlement was not made available to contractor, the Stipulation filed in this cause reflects a stipulation by all parties that the amount of the settlement was reasonable. Thus, no prejudice having occurred, this Stipulation completes the "vouching in" process.

ment of the claim of Mr. Elizer for the sum of $25,000 and obtained a general release. The defense expenses of the owner, attorneys' fees, etc., amounted to $1,031.90.

It is the opinion of the Court that, based on the evidence before this Court, the jury could reasonably have found that:

(1) Elizer was guilty of proximate negligence which caused the accident;

(2) Elizer was guilty of contributory negligence which proximately contributed to the accident;

(3) the owner was guilty of negligence which contributed to the accident; or

(4) the owner was guilty of proximate negligence which alone caused the accident.[3]

Faced with these contingencies, the owner called upon the general contractor to assume its responsibility under the indemnity agreement. The general contractor chose not to take control of the case. Thereafter, the owner opted to buy its peace.

 Certainly the general contractor is in no position to complain of the choice made by the owner. The indemnity contract provided that the general contractor would indemnify owner against claims. On demand it failed and refused to do so, and thereby bound itself to a reasonable and good faith defense or settlement of the action by Ford Motor Company. Certainly it is not within the spirit of the indemnity clause that the owner must defend all claims to a legal conclusion at its risk. It seems logical that if the minds of reasonable men might differ as to causation, the owner should not be required to run the risk of loss and expense of trial.

Since the indemnity agreement provides for indemnifying the owner against its own negligence (eliminating sole negligence and willful misconduct), the Court feels that the owner is enti-

tled to recover against the general contractor. Brogdon v. Southern Railroad, 384 F.2d 220 (6th Cir. 1967); Southern Railroad v. Foote Mineral, 384 F.2d 224 (6th Cir. 1967).

It is accordingly so held.

There is another compelling reason for the owner to prevail. This is that the accident was not caused by the "sole negligence" of the owner. From the evidence, after taking into consideration the intelligence, frankness, demeanor and attitude of the witnesses, it is clear that the injured employee, Elizer, was guilty of negligence which proximately contributed to the accident. The general contractor asserts that this negligence would have barred the recovery of Mr. Elizer in the original cause and thus should bar the recovery of the owner. In line with the reasoning above, this contention is rejected. Under the indemnity clause and the complaint in this cause, the only issue is whether the owner's negligence was the "sole negligence."

The general contractor, after being "vouched in," did not in turn call or officially request the subcontractor to accept the defense of the personal injury claim, nor assume the payment of any judgment rendered. As far as the evidence in this cause indicates, the subcontractor was not apprised of the claims of the injured employee, the acts of negligence asserted by him, the defenses raised by the owner, the settlement negotiations, nor the settlement made as the result thereof. As far as this record indicates, the settlement, release and suit compromise were submitted to the subcontractor for the first time by the filing of the third party complaint.

 The subcontractor, the third party defendant, asserts that the owner was not liable, and that if the owner was not liable, the subcontractor was not liable. The subcontractor further asserts, without contradiction, that it was never notified of the pending claim or action and was never given an opportu-

___

3. The trial court at the conclusion of all the evidence would probably have felt obligated to deny a motion for a directed verdict in favor of the owner.

nity to appear and defend. Lack of notice to the subcontractor, as indemnitor of the general contractor, of the pending action does not prevent an action by the general contractor, as indemnitee. Such a lack of notice, however, " * * * throws the burden of proof on the indemnitee * * * to establish all actionable facts. Under such circumstances the indemnitor is free to contest the validity of the judgment and the liability of the indemnitee." 42 C.J.S. Indemnity § 32(c) (2), p. 618. As it has been held by this Court that the employee was guilty of negligence which proximately contributed to the accident, and would have served to bar Mr. Elizer's recovery in the original cause, the general contractor, as indemnitee, has failed to sustain his burden of proof regarding his legal liability in the original action. This Court therefore finds that the general contractor is not entitled to indemnification from the subcontractor and so holds.

## ADDENDUM

### CONTRACTOR'S RESPONSIBILITY FOR PERSONAL INJURIES AND PROPERTY DAMAGE (31)

The Contractor shall be exclusively responsible for, shall bear, and shall relieve the Owner from liability for all loss and/or expense and/or damage and/or claims resulting from bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, and/or on account of damage to or destruction of property, including that of the Owner, and/or on account of loss of use of such property (except as otherwise specifically provided in the section hereof entitled 'Owner's and Contractor's Responsibilities—Fire and Certain Other Risks'), arising out of, or in connection with the performance of any work called for by this Contract, including all work assigned to the Contractor under this Contract, whether such loss, expense, damage and/or claims be caused by or result, in whole or in part, from the negligence or other conduct of the Contractor, any Subcontractor and/or the Owner, or any of the employees, agents or servants of any of them, or any other person or persons whatsoever, except that, anything to the contrary notwithstanding contained herein, the Contractor shall neither be responsible nor relieve the Owner from liability for the willful misconduct or the sole negligence of the Owner or any of its employees, agents or servants.