357 S.E.2d 207

Carl Stephen VALLORIC, et al.,
Plaintiff Below, Appellee,

v.

DRAVO CORP., etc. and Mobay Chemical Corporation, etc., Defendants Below, Appellees,

v.

MATTHEWS–McCRACKEN–RUTLAND CORP., Third-Party Defendant Below, Appellant.

DRAVO CORPORATION, Third Party Plaintiff Below, Appellee,

v.

MATTHEWS–McCRACKEN–RUTLAND CORP., Third-Party Defendant Below, Appellant.

No. 16956.

Supreme Court of Appeals of West Virginia.

March 3, 1987.

Rehearing Denied June 3, 1987.

William C. Gallagher, Timothy Cogan, O'Brien, Cassidy & Gallagher, Wheeling, for Matthews-McCracken-Rutland Corp.

**16**

Lester C. Hess, Jr., John E. Artimez, Jr., Bachmann, Hess, Bachmann & Garden, Wheeling, for Dravo.

Jack S. Francis, New Martinsville, for Mobay Corp.

Samuel White, and William D. Lemon, Lemon & Lemon, New Martinsville, for Valloric.

MILLER, Justice:

Matthews-McCracken-Rutland Corporation (M–M–R) appeals from a judgment entered against it in the Circuit Court of Marshall County. The main issue raised is whether M–M–R was required to indemnify the Dravo Corporation (Dravo) and the Mobay Chemical Corporation (Mobay) under the terms of an express indemnity agreement. Dravo and Mobay settled with the plaintiff prior to trial, but at trial the plaintiff was found to be 50 percent contributorily negligent and was therefore barred from recovery under *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979).[1] As a consequence, M–M–R asserts that Dravo and Mobay were simply volunteers who had paid without being under any legal compulsion.

The trial court found in its memorandum opinion that Dravo and Mobay had prior to trial settled under a reasonable good faith belief that they would be found liable to the plaintiff and this was sufficient to sustain their indemnity claim against M–M–R. We conclude the circuit court acted correctly in determining that potential liability and not actual liability was the standard of proof to sustain the indemnity claim.

The accident which gave rise to this indemnity issue occurred on September 23, 1980, when Carl Valloric, an electrician employed by M–M–R, was injured at a construction site owned by Mobay. He was working in the course of his employment when he struck his forehead on some low-hanging scaffolding allegedly erected by Dravo. As a result of the accident, Mr. Valloric suffered a rather severe neck injury and was unable to work for a considerable period of time.

M–M–R had contracted with Mobay to perform electrical work and Dravo was the general contractor in charge of the entire construction project. The indemnity clause in the contract between Mobay and M–M–R referred to M–M–R as the "Contractor," Mobay as the "Owner," and Dravo as the "General Contractor," and contained this language:

> "The Contractor agrees to indemnify and hold harmless the Owner, Engineer and General Contractor against any and all claims for loss, liability, or damage, on account of property damage or personal injury (including death), arising out of or in connection with the work done or to be performed and in connection with or arising out of the acts or omissions of Contractor's employees, however caused, while said employees are upon, entering or leaving the premises upon which this Agreement is being or is to be performed, provided that Contractor does not hereby assume responsibility for the sole negligence of General Contractor, Engineer or Owner."[2]

---

1. In *Bradley*, we altered the common law rule of contributory negligence by stating in Syllabus Point 3: "A party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident."

2. The provision in the indemnity clause precluding indemnity if the indemnitees were solely negligent parallels the requirement of W. Va. Code, 55–8–14 (1975):

> "A covenant, promise, agreement or understanding in or in connection with or collateral to a contract or agreement entered into on or after the effective date of this section [June 6, 1975], relative to the construction, alteration, repair, addition to, subtraction from, improvement to or maintenance of any building, highway, road, railroad, water, sewer, electrical or gas distribution system, excavation or other structure, project, development or improvement attached to real estate, including moving and demolition in connection therewith, purporting to indemnify against liability for damages arising out of bodily injury to persons or damage to property caused by or *resulting from the sole negligence of the indemnitee*, his agents or employees *is against public policy and is void* and unenforceable and no action shall be maintained thereon.

> "This section does not apply to construction bonds or insurance contracts or agreements." (Emphasis added).

On December 14, 1981, Mr. Valloric and his wife sued Dravo and Mobay for their alleged negligence in causing the accident. Dravo and Mobay then filed a third-party complaint against M–M–R, claiming that under the foregoing indemnity language, M–M–R would have to indemnify them for any damages suffered by the Vallorics.[3]

Prior to trial, Dravo and Mobay made a settlement with the plaintiffs in the amount of $105,000. The trial court found that M–M–R was invited to participate in the settlement, but declined to make any payment. Under the settlement agreement, the plaintiffs were able to proceed to trial against Dravo and Mobay, but the latter were insulated from any further payments if the jury verdict exceeded $105,000. The settlement agreement also provided that if the jury verdict exceeded $105,000 and Dravo and Mobay recovered in excess of $105,000 against M–M–R in their third-party indemnity suit, this excess amount would be given to the plaintiffs.[4]

A trial was held with Dravo, Mobay, and M–M–R participating in defense of the action. The jury found Mr. Valloric to have been 50 percent contributorily negligent, Dravo 30 percent negligent, Mobay 0 percent negligent, and M–M–R 20 percent negligent. Because Mr. Valloric was found to have been 50 percent negligent, no damages were awarded.

After the jury's verdict was returned, Dravo, Mobay, and M–M–R each filed motions for summary judgment on the indemnity issue. Dravo and Mobay sought to recover the $105,000 settlement they had paid to the Vallorics as well as attorney's fees and expenses from M–M–R based on the indemnity agreement. M–M–R argued that since the jury did not award any damages against Dravo and Mobay, they were not entitled to any recovery under the indemnity agreement.

The trial court granted summary judgment for Dravo and Mobay, holding that M–M–R was obligated for the $105,000 paid in the pretrial settlement along with interest from the date of the jury's verdict. The court also awarded to Dravo and Mobay their attorney's fees and expenses incurred in defense of the original suit brought by the Vallorics.

### I.

In this case we deal with an express indemnity agreement. We recognized in *Sydenstricker v. Unipunch Products, Inc.,* 169 W.Va. 440, 445, 288 S.E.2d 511, 515 (1982), that there are two categories of indemnity, i.e., express and implied, and pointed out that express indemnity is based on contractual principles:

> "There are two basic types of indemnity: express indemnity, based on a written agreement, and implied indemnity, arising out of the relationship between the parties. One of the fundamental distinctions between express indemnity and implied indemnity is that an express indemnity agreement can provide the person having the benefit of the agreement, the indemnitee, indemnification even though the indemnitee is at fault. Such result is allowed because express indemnity agreements are based on contract

It would appear that this statute was enacted in response to *Sellers v. Owens-Illinois Glass Co.,* 156 W.Va. 87, 191 S.E.2d 166 (1972), where we held in Syllabus Point 1 that: "Contracts of indemnity against one's own negligence do not contravene public policy and are valid."

**3.** The issue of whether M–M–R could waive its workers' compensation defense by executing an express indemnity agreement is not an issue in this appeal. In note 4 of *Sydenstricker v. Unipunch Products, Inc.,* 169 W.Va. 440, 447, 288 S.E.2d 511, 516–17 (1982), we said:

> "In finding no right of implied indemnity by the manufacturers as against the employer, we need not determine whether our statutory

prohibition (W.Va.Code, 23–2–6) against suing an employer who is covered by workmen's compensation for damages arising out of an industrial personal injury would bar a valid claim for either express or implied indemnity. The general rule is that it does not. 2 *Larson's Workmen's Compensation* § 76.30 (1981 Desk Ed.)."

**4.** The settlement agreement also provided that if the jury's verdict was under $105,000, then Dravo and Mobay could not obtain any refund from the plaintiffs. No claim is made that this type of settlement agreement is against public policy. *See State ex rel. Vapor Corp. v. Narick,* 173 W.Va. 770, 320 S.E.2d 345 (1984).

principles. Courts have traditionally enforced indemnity contract rights so long as they are not unlawful." (Citations omitted).[5]

The main argument of the parties centers over whether the defendants-indemnitees, Dravo and Mobay, had to prove in their indemnity claim against M–M–R that they were actually liable to the plaintiffs or whether it was sufficient to show that at the time they made the settlement, they had a reasonable belief that they were potentially liable to the plaintiffs. If an actual liability standard is required, Dravo and Mobay cannot recover on their indemnity claim because the jury found against the plaintiffs in the underlying suit.

■ The resolution of this issue of whether actual or potential liability must be shown depends on whether the indemnitor, M–M–R, had actual notice of the underlying claim, an opportunity to defend it, and the right to participate in any settlement negotiations. These conditions are generally held to be prerequisites for an indemnitee to have the benefit of the potential liability standard along with the further element that the settlement amount must be deemed to be reasonable in view of the potential liability. *E.g., Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207 (5th Cir.1986); *Burlington Northern, Inc. v. Hughes Bros., Inc.,* 671 F.2d 279 (8th Cir. 1982); *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills,* 211 F.2d 785 (10th Cir.), *cert. denied,* 348 U.S. 832, 75 S.Ct. 55, 99 L.Ed. 656 (1954); *Whittle v. Timesavers, Inc.,* 572 F.Supp. 584 (W.D.Va.1983), *rev'd on other grounds,* 749 F.2d 1103 (4th Cir. 1984); *Post Houses, Inc. v. Fireman's Fund Ins. Co.,* 469 So.2d 863 (Fla.App. 1985); *Iowa Mfg. Co. v. Joy Mfg. Co.,* 669 P.2d 1057 (Mont.1983); *Morris v. Schlumberger,* 445 So.2d 1242 (La.App.1984); *Trim v. Clark Equipment Co.,* 87 Mich. App. 270, 274 N.W.2d 33 (1978); *Morrisette v. Sears, Roebuck & Co.,* 114 N.H. 384, 322 A.2d 7 (1974); *Plumbers Specialty Supply Co. v. Enterprise Products Co.,* 96 N.M. 517, 632 P.2d 752 (N.M.App.1981); *Horn Constr. Co., Inc. v. MT Security Service Corp.,* 111 A.D.2d 220, 489 N.Y.S.2d 254 (1985); *Fireman's Fund Ins. Co. v. Commercial Standard Insurance Co.,* 490 S.W.2d 818 (Texas 1972); *Pan American Petroleum v. Maddux Well Service,* 586 P.2d 1220 (Wyo.1978).

■ In those situations where the party having a duty to indemnify has been notified or been made a party to the underlying proceedings and given an opportunity to participate in its settlement negotiations, courts have concluded that the defendant-indemnitee should not be required to prove the plaintiff's actual ability to recover the amount paid in the settlement. It is sufficient if the defendant-indemnitee proves that he was potentially liable to the plaintiff.

This position is based on the legal policy that encourages settlements.[6] This policy

5. In *Hill v. Joseph T. Ryerson & Son, Inc.,* 165 W.Va. 22, 268 S.E.2d 296 (1980), we discussed the concept of implied indemnity and noted that it rested on equitable principles which we summarized in Syllabus Point 2:

"The general principle of implied indemnity arises from equitable considerations. At the heart of the doctrine is the premise that the person seeking to assert implied indemnity—the indemnitee—has been required to pay damages caused by a third party—the indemnitor. In the typical case, the indemnitee is made liable to the injured party because of some positive duty created by statute or the common law, but the actual cause of the injury was the act of the indemnitor."

We also pointed out in *Hill,* 165 W. Va. at 27, 268 S.E.2d at 301, that in order for a person to recover on an implied indemnity claim, he had to be without fault with regard to the injured party. We cited this statement from § 96 of the *Restatement of Restitution* (1937): "A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in discharge of such liability." The absence of negligence or fault on the party seeking implied indemnity is one of the chief distinctions between it and the principle of express indemnity.

6. We have frequently stated that the policy of the law is to encourage settlements. *E.g.,* Syllabus Point 2, *State ex rel. Vapor Corp. v. Narick,* 173 W. Va. 770, 320 S.E.2d 345 (1984); *Floyd v. Watson,* 163 W. Va. 65, 254 S.E.2d 687 (1979); Syllabus Point 1, *Sanders v. Roselawn Memorial Gardens, Inc.,* 152 W. Va. 91, 159 S.E.2d 784 (1968).

would not be promoted if a party who has a right to be indemnified settles the case on a good faith basis and then is required to prove actual liability. To cast the burden of establishing actual liability on the settling defendant who has an indemnity claim means that often he must attempt to utilize the plaintiff and his witnesses to establish the liability against himself. One can assume that after a settlement the plaintiff's interest in the case would be marginal at best. Furthermore, as pointed out in *Morrissette supra*, 114 N.H. at 388, 322 A.2d at 10, to require proof of actual liability is to remove most of the incentive to settle as an indemnitee would be better served to force a plaintiff to prove his case and then enforce the judgment against the indemnitor:

"If a third-party plaintiff [indemnitee] is not to be discouraged from making a settlement his burden in an action for indemnity must not be too great. He would in effect be forced to proceed to trial against the original plaintiff in order to achieve the burden imposed by the court in *Cason v. Geis Irrigation Co.*, 211 Kan. 406, 413, 507 P.2d 295, 300 (1973), and would find settlement to little advantage. On the other hand, equitable considerations require that the third-party defendant have a reasonable opportunity to show that the third-party plaintiff was not liable to the original plaintiff but paid the claim as a volunteer."[7]

The majority of those cases that hold an indemnitee to an actual liability standard involve a fact pattern where the indemnitor has not been notified of the underlying litigation and given an opportunity to participate in the settlement negotiations.[8] Some courts have followed a due process rationale, as expressed in *Jennings v. United States*, 374 F.2d 983, 986 (4th Cir.1967): "The indemnitee's unilateral acts, albeit reasonable and undertaken in good faith, cannot bind the indemnitor; notice and an opportunity to defend are the indispensable due process satisfying elements." *E.g., Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (5th Cir.1973), *cert. denied*, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974).

We have recognized the requirement of giving notice to an indemnitor in *Hill v. Joseph T. Ryerson & Son, Inc.*, 165 W.Va. 22, 268 S.E.2d 296 (1980), which involved the right of implied indemnity accorded the seller of a defective product as against the manufacturer. There, we indicated that where an indemnitor is not notified of a pending action and thus given an opportunity to defend, he is not bound by the judgment rendered against his indemnitee in favor of the injured plaintiff. However, we found in *Hill* that the indemnitor was bound because it had been impleaded as a third-party defendant and had participated in the underlying action. In discussing the indemnitee's burden of proof, where the indemnitor has not been notified or made a

---

**7.** M–M–R claims that in view of the jury verdict of no liability, Dravo and Mobay were mere "volunteers." Some courts have utilized language to the effect that the settlement must be made under legal compulsion as indemnity is not available to a volunteer. *E.g., Suvada v. White Motor·Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965); *Aetna Freight Lines, Inc. v. R.C. Tway Co.*, 352 S.W.2d 372 (Ky.1961); *United Boatbuilders, Inc. v. Tempo Products Co.*, 1 Wash. App. 177, 459 P.2d 958 (1969). However, as Justice Holmes pointed out in *St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co.*, 201 U.S. 173,·182, 26 S.Ct. 400, 404, 50 L.Ed. 712, 717 (1906), a settlement of a law suit fairly made is paid under legal compulsion:

"We assume that the settlement was reasonable, and that the plaintiff could not expect to escape at less cost by defending the suits. If this were otherwise, no doubt the defendant

would profit by the fact. The defendant did not agree to repay a gratuity, or more than fairly could be said to have been paid upon compulsion. But a sum paid in the prudent settlement of a suit is paid under the compulsion of the suit as truly as if it were paid upon execution."

**8.** *E.g., Atlantic Richfield Co. v. Interstate Oil Transport Co.*, 784 F.2d 106 (2d Cir.1986); *Whisenant v. Brewster-Bartle Offshore Co.*, 446 F.2d 394, 402–03 (5th Cir.1971); *Tankrederiet Gefion A/S v. Hyman-Michaels Co.*, 406 F.2d 1039, 1042–44 (6th Cir.1969); *Ford Motor Co. v. W.F. Holt & Sons, Inc.*, 335 F.Supp. 775 (M.D.Tenn. 1971). This was also true in *Ashland Oil & Refining Co. v. General Telephone Co.*, 462 S.W.2d 190 (Ky.1970), one of the principal cases relied on by M–M–R in support of its actual liability test for indemnity.

party, we quoted at some length from 42 C.J.S. *Indemnity* § 32(a)(2) (1984), which discusses the actual liability burden.[9]

Here, the anomaly is that the jury in the underlying negligence action found that the plaintiff's contributory negligence precluded recovery and, as a consequence, no actual liability was found against Dravo and Mobay. There is an initial attractiveness to M–M–R's argument that under these circumstances Dravo and Mobay should not be able to prevail on their indemnity claim. There are, however, logical reasons that countervail against this argument.

■ First, the indemnity clause in this case is broadly worded, i.e., "against any and all claims for loss, liability, or damage on account of property damage or personal injury (including death)." Under this language, the indemnity obligation arose when a claim for liability was made against Dravo and Mobay and was not restricted to actual loss or damage. Courts have recognized that an indemnity agreement may be drawn to restrict its scope to actual loss or damage suffered by the indemnitee, but where the terms "claim" or "liability" are used, this bespeaks of a broader liability than the words indemnifying solely against "loss" or "damage." *E.g., Christy v. Menasha Corp.*, 297 Minn. 334, 211 N.W.2d 773 (1973), *overruled on other grounds, Farmington Heating and Plumbing Co. v. Fischer Sound and Aggregate, Inc.*, 281 N.W.2d 838 (Minn.1979); *Blain v. Sam Finley, Inc.*, 226 So.2d 742 (Miss. 1969); 41 Am. Jur.2d *Indemnity* § 29 (1968); 42 C.J.S. *Indemnity* § 13 (1944); Annot., 68 A.L.R.3d 7, 59 (1976).

■ Second, from a practical standpoint, it would seem that where, as here, the indemnity right was triggered at the time the suit was filed, this gave rise to the indemnitee's right to settle at any time prior to or during the trial. The validity of such a settlement should then be determined by the circumstances existing at the time it was made. It is obvious that where the underlying action involves complicated legal issues and disputed issues of fact and law, the ability to draw a bright line between liability and nonliability is not possible when a settlement is made prior to trial.

■ .We do not believe that a subsequent event occurring after the settlement, which adversely reflects on the settlement, should automatically bar the indemnitee's ability to recover in the later indemnity action. The focus must remain on what was a reasonable judgment in light of the circumstances at the time the settlement was made. If this were not the rule, then loss of critical evidence occurring after the settlement could always be utilized by the indemnitor to defend against the settlement. In the present case, the indemnitor was not foreclosed from arguing that the settlement was unrealistic because of the plaintiff's contributory negligence. He was only foreclosed from utilizing it as an automatic bar because of the jury's finding.

■ Finally, it must be remembered that the indemnitor is afforded a variety of procedural protections even under the potential liability standard. As we have earlier pointed out, in order to have the benefit of the potential liability standard, the indemnitee must give the indemnitor notice of the underlying claim and afford him an opportunity to defend it. He must also offer the indemnitor the opportunity to participate in the settlement negotiations.

Even after these conditions have been satisfied, under a potential liability standard, the indemnitee must in his. indemnity suit show that the original claim is covered by the indemnity agreement. Then he

---

9. The quotation in *Hill,* 165 W.Va. at 28, 268 S.E.2d at 301–02, was:

  " 'The omission to give notice to the indemnitor, however, does not affect the right of action against him, but simply changes the burden of proof and imposes on the indemnitee the necessity of again litigating and establishing all of the actionable facts. The indemnitor may show that the indemnitee had a good defense in the former action which he neglected to make, or that no liability existed against the indemnitee; or he may contest the validity of the judgment, as by showing that it was obtained by fraud or collusion; or he may contest the measure of damages recovered in the former action, or set up any other defenses he may have.' "

must demonstrate that he was exposed to liability which could reasonably be expected to lead to an adverse judgment. Finally, he must prove that the amount of the settlement was reasonable. In *Trim v. Clark Equipment Co.*, 87 Mich.App. 270, 278, 274 N.W.2d 33, 36–37 (1979), the court combined the concepts of exposure to liability and the fairness of the settlement amount into one phrase "reasonableness of the settlement," stating:

> "Potential liability actually means nothing more than that the indemnitee acted reasonably in settling the underlying suit. The reasonableness of the settlement consists of two components which are interrelated. The fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills*, 211 F.2d 785 (C.A.10, 1954); *Wisconsin Barge Line, Inc. v. Barge Chem. 300*, 546 F.2d 1125 (C.A.5, 1977). If the amount of the settlement is reasonable in light of the fact finder's analysis of these factors, the indemnitee will have cleared this hurdle. The fact that the claim may have been successfully defended by a showing of contributory negligence, lack of negligence or otherwise, is but a part of the reasonableness analysis and, therefore, subject to proof. *Moses-Ecco Co. v. Roscoe-Ajax Corp.*, 115 U.S.App. D.C. 366, 320 F.2d 685 (1963)." (Footnote omitted).

From the record before us, we believe that the judge, who had heard the underlying civil trial, was familiar with all of the operative facts surrounding the indemnity issue. He specifically found that M–M–R, which was a party in the suit, had been given an opportunity to participate in the settlement. He was aware that the jury had found that Dravo and Mobay were not solely negligent and thus had satisfied the condition in the indemnity clause that the accident was not a result of their negligence. He stated in his memorandum opinion on the indemnity claim that "[p]laintiff had accumulated special damages approaching One Hundred Fifty Thousand Dollars ($150,000)." It was for this reason, he found the settlement of $105,000 to be reasonable and, in good faith.

■ The indemnitees-defendants were large corporations, thus increasing the risk of a substantial verdict. If the jury had altered the plaintiff's contributory negligence by dropping it by one percent, the plaintiffs would have recovered a verdict under our comparative negligence rule. *See* note 1, *infra*. At the indemnitee hearing, the only substantial issue contested by the parties was the legal standard to apply and, as we have previously discussed, the trial judge was correct in utilizing the potential liability standard. In view of these factors, we conclude that the trial court acted properly in finding against M–M–R on the indemnity claim.

## II.

Challenge is made by M–M–R to the court's award of reasonable attorney's fees incurred by Dravo and Mobay in the defense of the underlying civil action. In *State ex rel. Vapor Corp. v. Narick*, 173 W.Va. 770, 775, 320 S.E.2d 345, 350 (1984), we cited numerous authorities [10] for the general proposition that: "In most cases, if an indemnitor does not assume control of

10. In *Vapor Corp.*, we cited *Frommeyer v. L & R Constr. Co.*, 261 F.2d 879, 881 (3d Cir.1958); *Southern Ariz. York Refrigeration Co. v. Bush Manuf. Co.*, 331 F.2d 1, 6 (9th Cir.1964); *Moore v. Chesapeake & O. Ry. Co.*, 493 F.Supp. 1252, 1270 (S.D.W.Va.1980), *aff'd*, 649 F.2d 1004 (4th Cir.1981); *White v. Calif. Co.*, 260 F.Supp. 586, 589 (W.D.La.1965), *aff'd per curiam sub nom. Bogle v. Calif. Co.*, 369 F.2d 699 (5th Cir.1966); *Commercial Ins. Co. v. Cleveland*, 86 Ariz. 288, 296, 345 P.2d 210, 216 (1959); *Jennings v. Ralston Purina Co.*, 201 So.2d 168, 175 (La.Ct.App. 1967); *Hartford Acc. & Indem. Co. v. Dahl*, 202 Minn. 410, 413–14, 278 N.W. 591, 593 (1938); *St. Paul Fire & Marine Ins. Co. v. Crosetti Bros., Inc.*, 256 Or. 576, 580, 475 P.2d 69, 71 (1970); *Harpeth Valley Util. Dist. v. Due*, 225 Tenn. 181, 185, 465 S.W.2d 353, 354–55 (1971); Annot., 77 A.L.R.2d 1143 (1961); 9B Michie's Jurisprudence of Virginia and West Virginia, *Indemnity* § 8 at 421 (1984); 41 Am.Jur.2d *Indemnity* § 36 (1968).

the indemnitee's defense, he will be held liable for the attorney fees and costs incurred by the indemnitee in the defense of the original action." This rule is, of course, predicated on the fact that the indemnitor has originally been notified of the underlying action, has been requested to assume the defense, and has refused to do so.

■ In the present case, we decline to sanction the entire award of attorney's fees as we believe that M–M–R's liability should end at the time the case was settled as between the plaintiffs and Dravo and Mobay. Once this settlement was made, Dravo and Mobay were relieved of any further liability to the plaintiffs. The fact that these parties were willing to let the litigation proceed to increase the potential exposure to M–M–R is a matter of choice made by these parties and something that M–M–R should not have to underwrite by paying the attorney's fees for Dravo and Mobay after the time the settlement agreement was reached. To the extent that the circuit court's order authorizes reasonable attorney's fees beyond this date, it is modified.[11]

### III.

■ The final challenge of M–M–R is with regard to the court's allowance of interest on the settlement amount. It would appear that this ruling comports with the general rule. In an indemnity action, interest ordinarily may be obtained on the amount paid in settlement of the underlying case. *E.g., Oglebay Norton Co. v. CXS Corp.,* 788 F.2d 361, 367–68 (6th Cir.), *cert. denied,* 479 U.S. 849, 107 S.Ct. 173, 93 L.Ed.2d 109 (1986); *Larive v. United States,* 449 F.2d 150, 152 (8th Cir. 1971); *Price v. Amoco Oil Co.,* 524 F.Supp. 364, 372 (S.D.Ind.1981); *Post Houses, Inc. v. Fireman's Fund Ins. Co.,* 469 So.2d 863, 864 (Fla.App.1985); *Northwestern Engineering Co. v. Thunderbolt Enterprises, Inc.,* 301 N.W.2d 421, 423 (S.D.1981). Admittedly, these cases do not contain an extensive discussion of the rationale for awarding interest. Several refer to prejudgment interest statutes which permit such interest if the sum is a liquidated amount. *Price v. Amoco Oil Co., supra; Northwestern Engineering Co. v. Thunderbolt Enterprises, Inc., supra.*

■ In view of the fact that a settlement made in an underlying civil action represents a liquidated amount with regard to the subsequent indemnity claim, such an amount comes within the purview of W. Va. Code, 56–6–31 (1981).[12] In the alternative, this being an express indemnity case arising out of a contract of indemnification, W. Va. Code, 56–6–27 (1931),[13] we have recognized the right to prejudgment interest under this section. *See Bond v. City of Huntington,* 166 W.Va. 581, 596, 276 S.E.2d 539, 547 (1981). The court's award of interest from the date of the jury verdict in the underlying trial was correct.

11. In *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986), we discussed at some length how reasonable attorney's fees are to be determined where they are sought against a third party, stating in Syllabus Point 4, in part, that "the test ... is determined not solely by the fee arrangement between the attorney and his client."

12. W.Va. Code, 56–6–31 (1981), provides:
"Except where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not: Provided, that if the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of such special or liquidated damages shall bear interest from the date the right to bring the same shall have accrued, as determined by the court. Special damages include lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court. The rate of interest shall be ten dollars upon one hundred dollars per annum, and proportionately for a greater or lesser sum, or for a longer or shorter time, notwithstanding any other provisions of law."

13. W. Va. Code, 56–6–27 (1931), states:
"The jury, in any action founded on contract, may allow interest on the principal due, or any part thereof, and in all cases they shall find the aggregate of principal and interest due at the time of the trial, after allowing all proper credits, payments and sets-off; and judgment shall be entered for such aggregate with interest from the date of the verdict."

For the foregoing reasons, we affirm the judgment of the Circuit Court of Marshall County, except the award of reasonable attorney's fees shall be limited to the date the settlement was made between the plaintiffs and Dravo and Mobay. This case is, therefore, remanded with directions to make the appropriate adjustment to the circuit court's final order.

Remanded with Directions.