841 F.2d 1122
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Welford L. COTTON; James Roger Cotton, Plaintiffs-Appellees,
v.
OTIS ELEVATOR COMPANY, a New Jersey Corporation; Richard M.
Whiston, Defendants-Appellants.
 No. 87-3552.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 7, 1988.
Decided: Feb. 26, 1988.
 
 Richard D. Owen (Stephen P. Goodwin; Goodwin & Goodwin, on brief), for appellants.
 John Franklin Wood, Jr. (Bert M. Grimm, Jr.; Wood, Grimm & Delp, on brief), for appellees.
 Before WIDENER and WILKINSON, Circuit Judges, and BULLOCK, United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Otis Elevator Company challenges the district court's grant of a directed verdict on Otis' indemnity counterclaim against Welford L. Cotton and James Rogers Cotton. Finding Otis' arguments entirely without merit, we affirm, and remand to the district court for entry of judgment in favor of the Cottons on their claims against Otis.
 
 I.
 
 2
 Welford L. Cotton and James Rogers Cotton sold all of the stock of the Cotton Elevator Company to Otis in 1981 in return for cash plus deferred payments. It is uncontroverted that under the terms of the agreement Otis now owes the Cottons some $165,000. Otis, however, has claimed that it is not obligated to pay the Cottons because of an offsetting obligation under the indemnity clause of the stock purchase contract. Specifically, Otis claims that the Cottons are required to indemnify Otis for $166,664 that it paid to the estate of Roy Dillon, who was killed in an accident involving an elevator serviced by Cotton Elevator before Cotton was acquired by Otis.
 
 
 3
 The contractual basis of Otis' argument is as follows: First, an indemnity provision in Article 8 of the stock purchase agreement provided that the Cottons
 
 
 4
 shall indemnify and save harmless Otis at all times after the date of this agreement against and in respect of ... (c) any and all liabilities, damages, or deficiencies resulting from any misrepresentation, breach of warranty or nonfulfillment of any condition on the part of the sellers under this agreement.
 
 
 5
 Second, the representations and warranties in the contract included this provision:
 
 
 6
 2:15 CONTRACTUAL RIGHTS. Cotton is in good standing under all leases, agreements, contracts and instruments to which it is a party and has fully performed all of its obligations and duties thereunder....
 
 
 7
 Cotton Elevator had a service contract with the W.H. Smith Hardware Co. for monthly greasing and oiling of two freight elevators. These elevators did not have "safety interlocks," devices which keep the elevator shaft doors closed unless the elevator is at the door. Cotton never warned Smith about the absence of the interlocks. Otis entered into a new contract with Smith Hardware following the stock sale, and during the subsequent two years it did not warn Smith either.
 
 
 8
 Dillon, an employee of Smith Hardware, was found dead at the bottom of an elevator shaft. The door of the shaft was open on the second floor, but the elevator was on the third. Otis settled with Dillon's estate before any lawsuit was filed, paying $166,664. Otis now claims against the Cottons, arguing that Cotton Elevator did not fulfill its duty to warn Smith Hardware, and thus was not in "good standing" and had not performed all of its obligations under the Smith contract as required under the stock sale contract. This failure in turn triggered the indemnity clause, argues Otis, as a misrepresentation or nonfulfillment of condition under the stock purchase contract that resulted in a liability to Otis.
 
 
 9
 After presentation of the evidence to the jury, the district court granted the Cotton's motion for a directed verdict as to the indemnity claim. The district court stated that Otis had failed to present any evidence as to several elements Otis had to prove in order to recover from the Cottons as indemnitors.
 
 
 10
 Also at issue here is a challenge by Otis and Richard Whiston, an Otis executive, to the denial of their motion for a continuance so that Whiston could appear at trial. The Cottons had sued Whiston for tortious interference with contractual relations on the basis of his part in their dispute with Otis; Whiston countersued for abuse of process. Otis had previously had the trial continued once. The trial date of March 10, 1987, was set on January 20, 1987. The motion for continuance was made on March 9, 1987, after Whiston had left for business travel in China. The trial court denied the continuance, and as a result dismissed Whiston's suit for failure to prosecute.
 
 II.
 
 11
 We find no basis whatsoever for disturbing the directed verdict granted by the district court. In reviewing this grant of a directed verdict, we have considered the evidence in the light most favorable to Otis, giving it the benefit of all reasonable inferences, to determine whether there is but one conclusion that reasonable jurors could reach. E.g., Alexander v. Curtis, 808 F.2d 337 (4th Cir.1987); Wheatley v. Gladden, 660 F.2d 1024 (4th Cir.1981). In order to avoid a directed verdict, Otis was required to raise a jury question as to each element that was necessary to its claim. The record simply does not contain any evidence on several West Virginia requirements that must be met for an indemnitee (Otis) to recover from an a indemnitor (the Cottons).
 
 
 12
 West Virginia law makes clear that where, as here, an indemnitee has not informed the indemnitor of a claim and allowed him to participate in its defense, the indemnitee bears the burden of showing that he was actually liable to the plaintiff. Valloric v. Dravo Corp., 357 S.E.2d 207 (W.Va.1987). Otis failed to present any evidence of its actual legal liability to Dillon's estate. First, Otis presented no evidence that the Dillons were able to meet even the technical requirements for recovery under the West Virginia wrongful death statute, such as qualification of a personal representative for the estate. See W.Va.Code Sec. 55-7-6 (1981). Otis presented no evidence of damages to the distributees of the estate, which is the only legal basis for a recovery under the West Virginia statute. See, e.g., Walker v. Walker, 350 S.E.2d 547, 549 (W.Va.1986). There is no evidence in the record showing that, as the estate would have had to prove, the lack of interlocks contributed to Dillon's death and that Dillon had not, for example, purposely opened the elevator door and exposed the elevator shaft in order to perform maintenance. Where an indemnitee fails to inform an indemnitor of a potential claim, West Virginia law requires the indemnitee to show that it was actually liable--not merely potentially liable--to the claimant before it may seek indemnity. Otis utterly failed to do so.
 
 
 13
 West Virginia law similarly imposes on the indemnitee who has failed to advise the indemnitor of a claim the independent burden of showing that the indemnitee's settlement of the claim was a reasonable one. Valloric, supra. Otis presented no evidence on the reasonableness of the amount of its settlement with the Dillon estate, and thus failed to meet its burden.
 
 
 14
 Finally, we agree with the district court that any duty on the part of Cotton Elevator to warn Smith Hardware of the lack of interlocks was superseded by Otis' duty to do the same. Otis performed elevator maintenance at Smith Hardware for two full years after Cotton's maintenance ceased. If a breach of a duty to warn was in fact the proximate cause of Dillon's death, that breach was Otis'. Whatever liability might have flowed from Dillon's death was not a liability "resulting from" Cotton's acts as would be required for Otis to prevail on a claim under the indemnity provision of Article 8 of the sale agreement.
 
 
 15
 The district court followed the proper course in granting a directed verdict and entering judgment in favor of the Cottons for the $165,000 plus interest that Otis owes them.
 
 III.
 
 16
 Richard Whiston's assertion that the district court's denial of a continuance was an abuse of discretion is without foundation. Unlike the situations in the cases cited by Whiston involving illness or other emergency, Whiston was absent due to a business trip to China. Further, although the date of the trial had been set for six weeks, Otis and Whiston saw fit to inform the district court of his absence on the day before the trial. In these circumstances, the district court's denial of a second continuance in this case was well within the bounds of discretion.
 
 
 17
 AFFIRMED.