**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CSX TRANSPORTATION,
INCORPORATED,
<u>Plaintiff-Appellant,</u>

v.
                                        No. 96-1951

CRISLIP MOTOR LODGE,
INCORPORATED; STATE FARM FIRE AND
CASUALTY COMPANY,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
William M. Kidd, Senior District Judge.
(CA-94-106-1, CA-93-157-1)

Argued: June 5, 1997

Decided: July 8, 1997

Before RUSSELL, HAMILTON, and MOTZ,
Circuit Judges.

_____

Vacated and remanded for further proceedings by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Ransom J. Davis, DANEKER, MCINTIRE & DAVIS,
P.C., Baltimore, Maryland, for Appellant. Beth Ann Raffle, STEP-
TOE & JOHNSON, Morgantown, West Virginia, for Appellees. **ON**

**BRIEF:** Jeffrey P. Buhrman, DANEKER, MCINTIRE & DAVIS, P.C., Baltimore, Maryland, for Appellant. Susan S. Brewer, STEP-TOE & JOHNSON, Morgantown, West Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The issues presented in this diversity action concern the respective rights and obligations of the appellees, Crislip Motor Lodge, Inc. (Crislip) and State Farm Fire & Casualty Company (State Farm), and the appellant, CSX Transportation, Inc. (CSXT), pursuant to an indemnification provision of a standard lodging agreement (the Agreement) entered into by Crislip and CSXT. The district court held that CSXT was not entitled to indemnification pursuant to the Agree-ment and entered judgment in favor of Crislip and State Farm. For reasons that follow, we vacate that judgment and remand for further proceedings.

I

On October 1, 1988, Crislip and CSXT entered into the Agreement, wherein Crislip agreed to provide lodging to CSXT's employees. The Agreement further provided that Crislip would:

> indemnify, save harmless and defend [CSXT], its servants, agents and employees, from and against all claims for loss or damage to property within or part of [Crislip Motor Lodge] and all injury to or death of any persons . . . in, on or about the [Crislip Motor Lodge] premises, arising out of, relating to or occurring in connection with the subject matter of and services provided by and performed under this

2

Agreement, whether the result of the sole or contributory negligence of [CSXT] or otherwise.

(J.A. 4). The Agreement also required Crislip to procure and maintain liability insurance covering liability assumed by it under the Agreement in the amount of not less than one-million dollars.

On November 11, 1988, James Chambers, a railroad brakeman for CSXT, stayed at Crislip in Grafton, West Virginia, pursuant to the terms of the Agreement. That evening, a Crislip employee spray-painted a model car in a utility room located beneath Chambers' room. Later that evening, Chambers, having been overwhelmed by noxious fumes, complained to two Crislip employees about the fumes. The following morning, Chambers complained to Crislip employees that he suffered a sore throat and a cough as a result of inhaling the fumes.

On November 13, 1988, Chambers filed an injury report with CSXT, claiming that the inhalation of the fumes at Crislip caused him to suffer respiratory injuries. As a result of his injuries, Chambers missed over five months of work.

On May 16, 1989, CSXT notified Crislip that Chambers had made a claim against it and, in accordance with the terms of the Agreement, tendered the claim to Crislip. In turn, Crislip notified its insurer, State Farm, of the claim. On November 20, 1989, State Farm notified CSXT that it "accepted the tender of this claim and will be handling it to its conclusion." (J.A. 21).

After investigation, on August 31, 1990, State Farm informed Chambers that it could find no causal connection between his claimed injuries and his subsequent diagnosis, but invited Chambers to submit additional supporting information and to submit to an independent medical examination at State Farm's expense.[1] Chambers declined. Accordingly, on November 27, 1990, State Farm notified Chambers and CSXT that it was denying the claim because there was no causal connection between Chambers' claimed injuries and his subsequent

_____

[1] Through its investigation, State Farm determined that Chambers' respiratory injuries were caused by years of exposure to diesel-fuel fumes.

3

diagnosis. On that same day, State Farm closed its file on Chambers' claim.

On April 26, 1991, Chambers filed an action under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., against CSXT based upon his exposure to the fumes at Crislip. The action was filed in the United States District Court for the Southern District of West Virginia, but was subsequently transferred to the District of Maryland. When CSXT was served with Chambers' FELA action, it did not notify Crislip or State Farm nor demand that Crislip or State Farm provide a defense pursuant to the indemnity clause of the Agreement. Instead, CSXT took control of its defense.

The FELA action was set for trial on September 20, 1993. On September 3, 1993, seventeen days before trial, CSXT informed State Farm of Chambers' FELA action and the trial date, and sought to invoke its rights under the indemnity clause of the Agreement.

On September 9, 1993, State Farm authorized CSXT to settle Chambers' FELA action for $25,000. When Chambers demanded $50,000, State Farm withdrew its authorization to settle and did not participate in the defense of Chambers' FELA action. Shortly thereafter, CSXT settled Chambers' FELA action for $50,000.

On October 18, 1993, Crislip and State Farm filed a declaratory judgment action in the United States District Court for the Northern District of West Virginia to resolve the disputed liability of Crislip and State Farm to CSXT under the indemnity clause of the Agreement. CSXT filed a mirror-image declaratory judgment action in the United States District Court for the District of Maryland. These cases were consolidated for disposition in the United States District Court for the Northern District of West Virginia.

The parties below filed cross-motions for summary judgment. On May 30, 1996, the district court granted Crislip and State Farm's motion for summary judgment and denied CSXT's motion. The district court held that CSXT was not entitled to indemnity under the indemnity clause of the Agreement because CSXT breached the Agreement when it failed to provide reasonable notice to Crislip and State Farm of Chambers' FELA action. CSXT noted a timely appeal.

4

II

CSXT argues that the district court erred when it granted summary judgment in favor of Crislip and State Farm because its failure to pro-
vide reasonable notice of Chambers' FELA action to Crislip and State
Farm is no bar to recovery under the indemnity clause of the Agree-
ment. We agree.

The parties agree that West Virginia law applies in this case. Under
West Virginia law, when an indemnitor is provided reasonable notice
of a claim that is covered by the indemnity agreement and is afforded
an opportunity to defend the claim but declines to do so, the indemni-
tor is bound by the judgment against the indemnitee if it was rendered
without collusion on the part of the indemnitee. See Vankirk v. Green
Constr. Co., 466 S.E.2d 782 (W. Va. 1995). In the event of a settle-
ment before judgment under these conditions, the indemnitor will be
held liable if the indemnitee demonstrates in the indemnity action that
the original claim was covered by the indemnity agreement, that he
was exposed to liability which could reasonably be expected to lead
to an adverse judgment, and that the amount of his settlement was
reasonable. See Valloric v. Dravo Corp., 357 S.E.2d 207, 214 (W. Va.
1987). This latter burden of proof is known as the"potential liability"
standard.

In contrast, when the indemnitor is not notified of the underlying
action, given an opportunity to defend, and/or given an opportunity
to participate in settlement negotiations, the indemnitee must prove in
the indemnity action that he was actually liable to the plaintiff. See
id. at 208, 213; Hill v. Joseph T. Ryerson & Son, Inc., 268 S.E.2d 296,
301-02 (W. Va. 1980). This heavier burden of proof is known as the
"actual liability" standard.

In this case, we are dealing with an indemnity action in which the
underlying claim was settled before judgment. Therefore, CSXT's
burden of proof under the indemnity clause of the Agreement turns
on the type of notice it provided to Crislip and State Farm. If CSXT
provided reasonable notice of Chambers' FELA action, the "potential
liability" standard applies. If CSXT did not provide reasonable

notice,
the "actual liability" applies.

5

The question of what constitutes reasonable notice need not be decided by this court. On appeal, CSXT expressly"does not argue" that its notice to Crislip and State Farm was reasonable as a matter of law. See Appellant's Brief at 16 n.1. Accordingly, CSXT must proceed under the "actual liability" standard on remand. **2**

The district court in this case concluded that CSXT's failure to provide reasonable notice of Chambers' FELA claim barred CSXT's indemnity action under the Agreement. The district court erred in reaching its conclusion because the question of reasonable notice simply altered CSXT's burden of proof in the indemnity action. The judgment of the district court is, therefore, vacated and the case is remanded for further proceedings consistent with this opinion. **3**

VACATED AND REMANDED FOR FURTHER PROCEEDINGS

_____

**2** CSXT also argues that Crislip and State Farm waived their rights to defend Chambers' FELA action and to complain that the notice provided was unreasonable because State Farm authorized CSXT, one week before Chambers' FELA trial date, to settle Chambers' FELA action for $25,000. This argument has no merit. Suffice it to say that we find it difficult to comprehend how CSXT can argue to this court that Crislip and State Farm, when blind-sided with only two weeks' notice of a trial, somehow waived their rights under the Agreement by failing to make

immediate evaluations and strategic decisions which they should have
had over two years to consider.

**3** We express no opinion on whether CSXT is entitled to any attorney's
fees for the defense of Chambers' FELA action. This issue is premature
for us to address, as it will only arise if CSXT prevails under the "actual
liability" standard on remand.

6